## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

KIMBERLY A. LEWIS,

      PLAINTIFF,

v.                                     CASE NO.: CV-10-J-2089-S

O'REILLY AUTOMOTIVE, INC.,
d/b/a O'REILLY AUTO PARTS,

      DEFENDANT.

## MEMORANDUM OPINION

Pending before the court is the defendant's motion for summary judgment (doc. 28), memorandum and evidence in support of said motion (doc. 29), the plaintiff's brief and evidence in opposition (docs. 32 and 33), and the defendant's reply (doc. 34). Having considered the pleadings, evidence and memoranda of the parties, the court finds as follows:

### I. Factual Background

Plaintiff sues her past employer for violation of Title VII, 42 U.S.C. §§ 2000e *et seq.*, 42 U.S.C. § 1981a and 42 U.S.C. § 1981 for race (black) and gender (female) discrimination and for retaliation due to her termination. The plaintiff began working for defendant on July 1, 2008. Defendant exhibit 6 (filed under seal). She was terminated on February 24, 2009, for allegedly allowing auto parts to leave

defendant's store without payment.  Defendant exhibit 5 (filed under seal); plaintiff depo. at 53.

The plaintiff asserts her problems began when she was transferred to the Hueytown store, which was managed by Jeremy Overton, on October 5, 2008.[1] Plaintiff depo. at 24, 42.  According to the District Manager, Lester Brown, plaintiff wanted to transfer to the Hueytown store and Overton thought she could bring in more business so they requested she be transferred.  Brown depo. at 46-47.

According to the plaintiff, Overton stated to her, "I'm happy to have you here, a black face, so you can, you know, interact with the black customers because we don't have anyone to really interact with them."[2]  Plaintiff depo. at 24.  The plaintiff also complains that she and the other women who worked during the day shift were required to stock heavy auto parts, but the men who worked the night shift never put stock away.  Plaintiff depo. at 32.  The plaintiff agrees that stocking items was within

---

[1]The plaintiff actually complains about issues prior to her transfer.  She described working at her first location, the Midfield store, as "just chaos.  It was nothing ran right." Plaintiff depo. at 28.  A manager was transferred to Midfield from another location, at which point the plaintiff noticed cash shortages in her register drawer.  *Id*. at 28-29.  After several complaints went unanswered, plaintiff contacted Jason Mallory in loss prevention.  *Id.* at 29. Mallory investigated and the manager was terminated.  *Id.*  The plaintiff asserts none of her problems with that manager were based on her race or gender, but rather that manager was "just lazy." *Id*. at 31.

[2]Sherry Frost, plaintiff's co-worker, testified that she never heard a comment like this, and that Overton hired plaintiff because plaintiff had a lot of commercial account experience. Frost depo. at 43.

her job description and white women on her shift had to stock too.[3]  Plaintiff depo. at 33-34.

Plaintiff had no complaints about anyone employed by defendant other than Overton.  Plaintiff depo. at 90.  The plaintiff asserts Overton was discriminatory towards women employees, calling them stupid and idiots and talking about them to each other.  *Id.* at 35.  She further alleges Overton would make black jokes and ask "why black people always eating chicken and collard greens and stuff like that."  *Id.*

During her employment with defendant, the plaintiff never received a Team Member Handbook.  Plaintiff depo.  at 35-36.  She states she did not know how she could complaint about workplace harassment, but admits she knew there was a policy prohibiting harassment and a hotline she could call, because it was posted in the breakroom.  *Id*. at 37-39, 69, 71.  Rather than calling the hotline, the plaintiff went to Overton's District Manager, Lee Reese. *Id*. at 38, 40. She first called Reese sometime in January 2009 regarding the manner in which the commercial program was run.  *Id*. at 42, 44, 73.  Reese agreed that part of the plaintiff's job was to go out on sales calls, and told Overton plaintiff needed to do so.  *Id*. at 44.

The plaintiff again contacted Reese on or about February 3, 2009, because she had been written up for quote tickets.  Plaintiff depo. at 41, 43, 45-46; defendant

---

[3]The plaintiff and two white women were the only day shift employees.  Plaintiff depo. at 90.

exhibit 3 (sealed).  The plaintiff explained she followed Overton's instructions for quote tickets and therefore thought her write up by Overton was unfair, so the following day Overton wrote up himself and Jessica Armstrong for the same practices.[4]  Plaintiff depo. at 42, 46, 59; defendant exhibit K (sealed); Mallory depo. at 62-64.

That same day she was written up regarding the quote tickets, the plaintiff also received a write up because her cash register drawer was short.  Plaintiff depo. at 47; defendant exhibit 4 (sealed).  The plaintiff also thought this was unfair because both another employee and Overton operated the same register with the same cash drawer. *Id*. at 47.  The plaintiff complained to Reese (plaintiff depo. at 72, 74), and also told Mallory she thought the write up was unfair because Overton was in her cash register too, although she had not had any cash shortages.[5]  Mallory depo. at 69, 71, 74-75.

---

[4]Overton sent the write up to Reese.  Frost depo. at 39; Overton depo. at 69, 75. According to Lester Brown, the district manager over the Midfield store, plaintiff had been using quote tickets in the same manner when she worked at the Midfield store, but was not disciplined in writing for it at that time.  Brown depo. at 35-36.  Brown was informed by Mallory that people in the store were using quote tickets and it needed to stop, but Mallory did not identify who was doing this within Browns' district.  Brown depo. at 45-46.  Mallory had previously written up Overton, once in September 2008 for problems discovered during an audit, and again in October 2008 for claiming an item was returned that was not. Mallory depo. at 25-30, 34-35.

[5]By declaration, the plaintiff claims she told Overton it was race discrimination to write her up and not himself or Armstrong when Armstrong delivered the part and he instructed her to use quote tickets.  Plaintiff declaration, ¶ 9.  Similarly, by declaration, the plaintiff claims she told Reese the same thing.  Plaintiff declaration, ¶ 10.

In regard to her claim that Overton treated women unfairly, Plaintiff alleges that Overton would not let her or the other two day shift women go on break, made them eat at the parts counter, and made them stock oil.  Plaintiff depo. at 80. However, if the day shift women left the really heavy parts on the floor, the men who worked evenings would put them away.  *Id*. at 83-85.  The plaintiff also testified that putting away stock was a function of the day shift position, and not a night shift responsibility.  *Id*.  Sherry Frost, who worked with plaintiff on this shift, agreed that stocking was part of their jobs.  Frost depo. at 35.  At times, Overton  would help them stocking and carrying heavy parts.  *Id*. at 37.

On February 24, 2009, the plaintiff walked into work and was told by Overton she no longer had a job.  Plaintiff depo. at 53.  She did not know the reason for her termination until she applied for unemployment benefits.  *Id*. at 54.  At that time, she learned defendant was accusing her of allowing an auto part to leave the store without being paid for.  *Id*. at 54-55.  However, the plaintiff had called Mallory and told him that she knew allowing the part to leave without payment was against policy, but added that the customer insisted Overton had said he could.  *Id*. at 56-58.

The plaintiff believed Overton was setting up incidents so he could fire her. Plaintiff depo. at 61. Mallory was asked to investigate issues Overton had with plaintiff, but it was never in an attempt to fire her.  Mallory depo. at 33.  Shortly after plaintiff's termination, Overton was also fired.  Frost depo. at 54, 57-58; Overton

5

depo. at 100-101.  Overton's termination stemmed from third store audit he failed in a row.  Mallory depo. at 99, 101; see also plaintiff exhibits 4, 5 and 8 to Mallory depo.

The plaintiff claims she was replaced by a less qualified male, named Jarvis. Plaintiff depo. at 86-87.  Her notice of discharge states after her first and final warning, the plaintiff continued to allow parts to leave the store without payment being made.  Defendant exhibit 5 (sealed).  An additional warning issued on February 25, 2009, stated the plaintiff's attendance is unsatisfactory.  Defendant exhibit 6 at 00260 (sealed).

## II. Standard of Review

A moving party is entitled to summary judgment if there is no genuine issue of material fact, leaving final judgment to be decided as a matter of law. *See* Federal Rule of Civil Procedure 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587, 106 S.Ct. 1348, 1355-56 (1986).  An issue is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case.  It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party.  *Allen v. Tyson Foods, Inc*., 121 F.3d 642, 646 (11th Cir.1997).

6

The facts, and any reasonable inferences therefrom, are to be viewed in the light most favorable to the non-moving party, with any doubt resolved in the nonmovant's favor. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 90 S.Ct. 1598, 1609 (1970). Once met by the moving party, however, the burden shifts to the non-moving party to come forward with evidence to establish each element essential to that party's case sufficient to sustain a jury verdict. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir.1990).

A party opposing a properly submitted motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir.1990). In addition, the non-moving party's evidence on rebuttal must be significantly probative and not based on mere assertion or be merely colorable. *See* Rule 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2511 (1986). Speculation does not create a genuine issue of fact. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir.2005). The language of Rule 56 "mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.,*

7

477 U.S. at 322-23.  With these standards in mind, the court considers each of the plaintiff's claims.

## III.  Legal Analysis

The court must consider the evidence in the light most favorable to the plaintiff and may not make credibility determinations nor weigh the parties' evidence. *Frederick v. Sprint/United Management Co.* 246 F.3d 1305, 1311 (11th Cir.2001); *Stewart v. Booker T. Washington Ins*., 232 F.3d 844, 848 (11th Cir.2000).  With these standards in mind, the court considers each of the plaintiff's claims.

### *Race and Gender Discrimination*

A plaintiff may prevail on an employment discrimination claim by either proving that intentional discrimination motivated the employer or producing sufficient evidence to allow a rational trier of fact to disbelieve the legitimate reason proffered by the employer, which permits, but does not compel, the trier of fact to find illegal discrimination.  *Wilson v. B/E Aerospace, Inc,*. 376 F.3d 1079, 1088 (11th Cir. 2004), citing *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 147-48, 120 S.Ct. 2097, 2108-09, 147 L.Ed.2d 105 (2000).

Plaintiff asserts that the above facts constitute race and gender discrimination as well as retaliation.[6]  As the court can find no direct evidence of discrimination, the

---

[6]Although plaintiff has stated these claims pursuant to 42 U.S.C. § 2000e *et seq*., 42 U.S.C. § 1981 and 42 U.S.C. § 1981a, these statutes are all analyzed under the *McDonnell*

court must apply the three prong test fashioned by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817 (1973), as required for circumstantial evidence. *See also Texas Department of Community Affairs v. Burdine,* 450 U.S. 248; 252-253; 101 S.Ct. 1089, 1093-1094 (1981).  First, the plaintiff must establish a *prima facie* case of discrimination.  *McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S.Ct. at 1824. Establishment of a *prima facie* case creates a presumption that the employer unlawfully discriminated against the employee.  *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094; *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527-1528 (11th Cir. 1997).  Assuming the employee meets this burden, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the alleged discriminatory employment action. *Harris v. Shelby County Board of Education,* 99 F.3d 1078, 1083 (11th Cir.1996).  The defendant can feasibly present such strong evidence of a nondiscriminatory rationale that summary judgment is warranted. *Brown v. American Honda Motor Co., Inc.,* 939 F.2d 946, 950 (11th Cir.1991), *cert.*

---

*Douglas* framework, set forth above.  See e.g., *Bryant v. Jones*, 575 F.3d 1281, 1307 (11th Cir.2009), *cert. denied*, --- U.S. ----, 130 S.Ct. 1536, 176 L.Ed.2d 115 (2010). (stating that both § 1981 and Title VII are subject to the same standards of proof and employ the same analytical framework); *Goldsmith v. Bagby Elevator Co.,* 513 F.3d 1261, 1277 (11th Cir.2008) (applying the same three-part test to retaliation claims under § 1981 and Title VII); *Rice–Lamar v. City of Ft. Lauderdale, Fla*., 232 F.3d 836, 843 n. 11 (11th Cir.2000); *Standard v. A.B.E.L. Servs., Inc.,* 161 F.3d 1318, 1330 (11th Cir.1998) (noting that claims under § 1981 are analyzed under the Title VII framework).

*denied*, 502 U.S. 1058 (1992)(quoting *Grigsby v. Reynolds Metals Co.,* 821 F.2d 590, 596 (11th Cir.1987).

An employer's stated reason is not a pretext unless it is shown that both: (1) the reason was false; and (2) the real reason was unlawful. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). A plaintiff may show a pretext either "directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Jackson v. Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir.2005). In both instances, a plaintiff must show pretext with "concrete evidence in the form of specific facts." *Bryant*, 575 F.3d at 1308. Mere "conclusory allegations and assertions" will not suffice. *Id.*

Once a defendant presents a legitimate, nondiscriminatory reason for its action, the presumption of discrimination drops from the case. *Burdine,* 450 U.S. at 255, 101 S.Ct. at 1094 and n. 10.  The plaintiff must then demonstrate by a preponderance of the evidence that the reason offered by the defendant was not the true reason for the employment decision, but rather a mere pretext for discrimination.  *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825.  The focus of the case after the defendant meets its burden of production is on the defendant's subjective intent and the

10

motivation behind the defendant's adverse employment action directed at plaintiff. *Harris*, 99 F.3d at 1083.

The plaintiff meets her prima facie burden of proof by establishing that (1) she is a member of a protected class; (2) she was qualified for the position;  (3) she was subjected to an adverse employment action; and (4) she was treated less favorably by her employer than similarly situated employees outside her protected class. *Maynard v. Board of Regents of Div. of Fla. Dep't of Educ. ,* 342 F.3d 1281, 1289 (11th Cir.2003)*; Rice-Lamar v. City of Fort Lauderdale,* 232 F.3d 836, 842-43 (11th Cir.2000); *EEOC v. Joe's Stone Crab, Inc.,* 220 F.3d 1263, 1286 (11th Cir.2000). "To show that employees are similarly situated, the plaintiff must show that the employees are similarly situated in all relevant respects...." *Knight v. Baptist Hosp. of Miami, Inc*., 330 F.3d 1313, 1316 (11th Cir.2003) (internal quotation marks omitted).

The court has carefully read the plaintiff's and the defendant's evidentiary submissions.  For purposes of the pending motion only, the court assumes that the plaintiff meets the elements of her *prima facie* case.  As a black female, the plaintiff is a member of a protected class.  The parties do not dispute that she was qualified for her job.  Similarly, the discharge itself was an adverse employment action.[7]  The court

---

[7]The evidence demonstrates Overton applied the same work rules to all females, black or white.  Therefore, the court finds the plaintiff is alleging two separate categories of

11

also finds evidence that from which it could arguably conclude that males were treated better than females.[8]   Therefore the defendant must show a legitimate, nondiscriminatory reason for plaintiff's termination.

Although the defendant asserts that the plaintiff was treated like other female employees, the plaintiff asserts that this claim is focused on plaintiff's termination by defendant when Overton was not terminated by defendant. Plaintiff's response, at 16. The plaintiff argues that Overton manufactured a situation to terminate plaintiff.  *Id.* However, the plaintiff fails to assert that her termination was based on discrimination or the fact that she is a black female.  *Id.*  Additionally, Overton was terminated by the defendant not long after the plaintiff's termination.

Although hard to decipher, plaintiff seems to claim that Overton was looking for a reason to terminate the plaintiff because the plaintiff was a black female. Plaintiff seeks to have the court find plaintiff and Overton valid comparators.

---

discrimination by Overton.  The plaintiff asserts some comments by Overton were racially based, but his application of work rules was gender based. Plaintiff claims her termination was in retaliation for her complaints, although the evidence supports a finding that her complaints were based on work related discipline, not race or gender based harassment or discrimination.  At best, taking plaintiff's allegations in the light most favorable to her, she received the "first and final" write up for the quote tickets after a prior warning.

[8]The court does not find evidence which supports plaintiff's argument she was treated differently than employees outside her protected class based on race.  This is particularly true as the court can find no evidence of the race of the other employees at the Hueytown store, other than the fact that the women who worked on day shift with plaintiff were white.  There is no evidence that they were treated differently than plaintiff or that they are similar enough in their positions to be viable comparators.

However, Overton made the decision to terminate plaintiff. The fact that he did not also terminate himself for the same incident in no way adds credence to plaintiff's argument that her termination was based on her race or gender.

A "plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by race." *Alexander*, 207 F.3d at 1339. The Eleventh Circuit Court of Appeals has explained:

> [A] plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reasons, at least not where ... the reason is one that might motivate a reasonable employer. *Combs,* 106 F.3d at 1543. *See also Damon v. Fleming Supermarkets of Florida, Inc.,* 196 F.3d 1354, 1361 (11th Cir.1999) (emphasizing that courts "are not in the business of adjudging whether employment decisions are prudent or fair. Instead, our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision"); *Deines v. Texas Dept. of Protective and Regulatory Servs.,* 164 F.3d 277 (5th Cir.1999) (explaining that "it is not the function of the jury to scrutinize the employer's judgment as to who is best qualified to fill the position.... The single issue for the trier of fact is whether the employer's selection of a particular applicant over the plaintiff was motivated by discrimination.").

*Alexander,* 207 F.3d at 1339 -1340.

The reason offered by an employer "'does not have to be a reason that the judge or jurors would act on or approve' .... Instead, all that matters in that the employer advance an explanation for its actions that is not discriminatory in nature. *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1269 (11th Cir.1999).

The defendant before the court has done just that.  Defendant asserts the plaintiff was terminated for allowing parts to leave the store without payment, after being warned not to do this.  Plaintiff asserts not that this reason is false, but that she did so because her manager told her to.  This would be true of any employee who had let the parts leave the store without payment, not just black female employees.  In no manner does such an argument lend credence to the plaintiff's allegation that her termination was motivated by discrimination.  The court's role is not to act as a super personnel department that second-guesses employers' business judgments.  *Lee v. GTE Florida, Inc.,* 226 F.3d 1249, 1253 (11th Cir.2000).  The court finds the facts simply do not support the plaintiff's allegation of gender or race discrimination.  Having considered the foregoing, and being of the opinion that the plaintiff has failed to demonstrate any genuine issue of material fact on her claims of race and sex discrimination, the court shall grant the defendant's motion for summary judgment on these claims by separate order.

### *Retaliation*

The plaintiff also argues that she can establish a prima facie case that she was terminated in retaliation for her complaints. Assuming the court could find such a

claim stated in the single count complaint,[9] by declaration the plaintiff asserts she "specifically mentioned race discrimination" in her complaints to Overton and Reese following her write ups on February 3, 2009.   Plaintiff declaration, ¶¶ 9, 10.

Under Title VII, the plaintiff does not have to prove the underlying claim of discrimination in order to establish a retaliation claim.  *Taylor v. Runyon*, 175 F.3d 861, 869 (11th Cir.1999).  To establish a prima facie case of retaliation for engaging in protected activity, the court must use the *McDonnell-Douglas* burden shifting standard, discussed in detail, *supra*.  The plaintiff must show that she (1) engaged in Title VII protected activity; (2) an adverse employment action occurred; and (3) a causal connection between the protected activity and the adverse employment action exists.  *Sullivan v. National Railroad Passenger Corp*., 170 F.3d 1056, 1059 (11th Cir.1999); *see also Runyon*, 175 F.3d at 868, citing *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993).

The plaintiff asserts by declaration that she told Overton and Reese that it was race discrimination to write her up and not himself or Armstrong when Armstrong delivered the part and he instructed her to use quote tickets.  Plaintiff declaration, ¶¶ 9-10.   When asked in her deposition, the plaintiff agreed there was a policy

---

[9]The plaintiff alleged in her complaint that she believed she "was terminated because of her sex and race, African-American, because she complained of sex and race discrimination." Complaint, ¶ 21.

prohibiting harassment and hotline she could call.  Plaintiff depo. at 37-39, 69, 71.

Rather than calling the hotline, the plaintiff went to Reese.  Plaintiff depo. at 38, 40.

She complained about the way the commercial program was run, and later

complained that she was written up for quote tickets when Jessica Armstrong was not,

and that Armstrong was the person who delivered the part in question.  Plaintiff depo.

at 41-46, 73; defendant exhibit 3 (sealed).  The plaintiff also complained to Reese and

Mallory that it was unfair that she receive a write up because her cash register was

short when other people had access to the register.  Plaintiff depo. at 47, 72, 74;

defendant exhibit 4 (sealed).  When asked at deposition, the plaintiff did not mention

any complaints to Reese or Overton regarding race or sex discrimination.

The plaintiff admits her complaints were in response to discipline she received

on February 3, 2009.  She does not allege that she did not deserve the discipline, but

rather that other employees should have been disciplined as well.  Plaintiff asserts

these allegations establish her prima facie case.  Although the plaintiff's termination

would seemingly be for violating the same policy for which she had previously

received a write up, by declaration the plaintiff alleges she specifically complained

to her manager that the write up was based on race discrimination.

To establish a causal connection, a plaintiff must show "that the protected

activity and adverse action are not wholly unrelated." *Clover v. Total System Services,*

*Inc.,* 176 F.3d 1346, 1354 (11th Cir.1999) (quoting *Simmons v. Camden County Bd. of Educ.,* 757 F.2d 1187, 1189 (11th Cir.1985)). This element is satisfied where the plaintiff provides "sufficient evidence that the decision-maker became aware of this protected conduct, and that there was close temporal proximity between this awareness and the adverse employment action." *Farley v. Nationwide Mut. Ins. Co.,* 197 F.3d 1322, 1337 (11th Cir.1997).   Here, the plaintiff has alleged that she complained to Overton and Reese that the write ups of February 3, 2009, were unfair and that but for race discrimination, Overton and Armstrong should have been written up as well.   Because the court finds that the plaintiff's declaration creates a genuine issue of material fact concerning plaintiff's claim that her termination was in retaliation for her complaints of race discrimination, the court shall deny the defendant's motion for summary judgment on this claim.

The plaintiff also alleges that "Overton attempted to blame Lewis for his inability to competently manage the store." Plaintiff's response, at 19.  However, not one shred of evidence, as opposed to argument, supports this.  The plaintiff argues that "Overton clearly intended to terminate Lewis for discriminatory reasons and to blame Lewis, an African American female, for any missing cash and for his poor management generally."  Plaintiff's response at 20-21.  Even if the court could find any evidence that Overton attempted to blame his managerial shortcomings on

plaintiff, the court could still not make the leap that Overton sought to blame his managerial shortcomings on plaintiff *because* she was an African-American female.

The plaintiff continues that "Lewis [sic] placed Overton [sic] in a position where she could be blamed for missing cash." *Id*. However, the plaintiff does not allege that running a cash register was outside her job description, making this argument indecipherable.[10]  Additionally, plaintiff's argument that "Overton did not discipline Jessica Armstrong (Caucasion) even though she was the employee who delivered the part and failed to collect payment" (plaintiff's response, at 19), is wholly contradicted by the plaintiff's testimony, that "[h]e only wrote  Jessica and I up.  Sherry Frost took quote tickets, too..."  Plaintiff depo. at 47.

### Hostile Work Environment

The plaintiff also asserts she endured a racially hostile work environment.  The court again finds the plaintiff has failed to allege any such claim in her complaint and has put forth no evidence of a racially hostile work environment.[11]  At most, taking the evidence in the light most favorable to the plaintiff her supervisor made several

---

[10]The plaintiff testified at deposition that "at O'Reilly, your team member number is not secure... they would ring stuff up on my code." Plaintiff depo. at 47-48.  Rather than being tied to discrimination, the plaintiff's complaints support a finding of poor management, which is outside the powers of this court.

[11]The plaintiff stated in her complaint that she complained of sex discrimination to Loss Prevention, after which she was disciplined unfairly based on her sex.  Complaint, ¶¶ 11-14.

18

racist comments over several months, about which the plaintiff never complained. She readily admitted at deposition that she never reported these comments.  This claim is therefore foreclosed.   Even if the court considered this claim on its merits, the environment described by the plaintiff in no manner reaches the "severe or pervasive" test.

## IV.  Conclusion

The court having considered the foregoing, and finding that the plaintiff has failed to establish any genuine issue of material fact on her claims of race discrimination, sex discrimination and hostile environment, the court **ORDERS** that the defendant's motion for summary judgment on those claims is **GRANTED** and said claims are **DISMISSED WITH PREJUDICE**.

The court further finds that on the plaintiff's claim of retaliation, genuine issues of material fact remain in the case.   The court therefore **ORDERS** that the defendant's motion for summary judgment on this claim is **DENIED**.   This case remains set for trial and pretrial conference as previously Ordered by the court.

**DONE** and **ORDERED** this the 4th day of October, 2011.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE